# Complaint Exhibit 8

Department of Health and Human Services
Office of the Secretary

NOV 18 '25 RCVD

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

New Orleans Field Office
500 Poydras Street
Suite 614
New Orleans, LA 70130
504-226-3960
(505) 407-3889 (Direct)
(504) 523-7092 (Fax)
833-636-1475 (Toll Free)

November 04, 2025

WACHLER & ASSOCIATES PC
ATTN: KAITLYN DELBENE
210 E 3RD ST STE 204
ROYAL OAK, MI 48067

**NOTICE OF DECISION**

Appellant: WYOMING MEDICAL ASSOCIATES, LLC
OMHA Appeal Number: 3-15371266459

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127

Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110

Jacksonville, FL 32202

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**New Orleans, LA**

| | | | |
|---|---|---|---|
| Appeal of: | **WYOMING MEDICAL ASSOCIATES, LLC** | OMHA Appeal No.: | **3-15371266459** |
| Beneficiary: | [redacted] | Medicare Part: B | |
| Medicare No.: | | Before: | **Kelly McNeil Legier** Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record, I enter a **PARTIALLY FAVORABLE** decision. The applications of the Xwrap wound cover, per square (sq) centimeter (cm) (Q4204) ("service at issue") ("service at issue"), provided to the Beneficiary from April 18, 2024, to April 30, 2024 ("Dates of service"), are covered under Medicare Part B.

Regarding the claims for the application of skin substitute (15271) and application of skin substitute (15272) provided to the Beneficiary on April 18, 2024, and April 26, 2024, the Appellant did not dispute the QIC's dismissal determination for these claims. Therefore, I affirm the QIC's decision to dismiss.

## PROCEDURAL HISTORY

The Appellant submitted seven claims to Medicare for the services at issue provided to the Beneficiary on the Dates of Service. Upon initial determination, the Medicare Administrative Contractor ("MAC") denied the claims.

Upon redetermination, an unfavorable decision was made because the service was determined to be not reasonable and necessary and investigational. The MAC based its decision on Medicare law, regulation and/or policy, which was cited in the redetermination decision.

Subsequently, on reconsideration, the Qualified Independent Contractor ("QIC") issued an unfavorable decision stating that the service at issue is experimental and investigational as denoted by the Q code status nomenclatures. The QIC stated that, since the service at issue is considered investigational and not payable, as per CMS, the service at issue did not meet the medically reasonable and necessary requirements of Section 1862(a)(1)(A) of the Act. Therefore, no payment could be allowed. The QIC held the Appellant responsible for the non-covered costs.[1]

[1] I acknowledge that throughout its analysis, the QIC referred to the service at issue as Impax amniotic membrane (Q4262) although it had listed the service as "Q4204: Xwrap Wound Cover, Per Sq Cm" earlier in the decision. (*See* File 2, pp. 4, 5). Both the MAC and the Appellant clearly identified Xwrap (not Impax) as the service at issue. Further, during the hearing, the Attorney challenged the QIC's decision, in part, because the QIC referenced a product that is not at issue in the present appeal; the QIC referenced Impax rather than Xwrap. Hearing Recording (September 30, 2025). For purposes of this appeal, I have treated the Impax references as cut & paste/proofreading

In addition, pertaining the application of skin substitutes (15271) and application of skin substitute (15272), the QIC stated no redetermination (first level of appeal) was conducted by the MAC. The QIC explained that the Appellant must first appeal to the MAC and if the MAC reviewed the Appellant's case and makes an unfavorable or partially unfavorable decision, then, the Appellant will have appeal rights to file a request for reconsideration (second level appeal) with the QIC. (File 2).

The Office of Medicare Hearings and Appeals ("OMHA") received a timely filed request for a hearing by an Administrative Law Judge ("ALJ"). 42 Code of Federal Regulations ("C.F.R.") § 405.1002(a)(1). The amount in controversy meets the statutorily required amount. § 405.1006(b)(1).

A telephone hearing was held on September 30, 2025. The Appellant was represented at the hearing by counsel, Kaitlyn DelBene, Esq., Jennifer L. Colagiovanni, Esq., and Erin Liechty, Esq., who practice with WACHLER & ASSOCIATES, P.C. Dennis Jack, CEO of the Appellant, and Charles Zelen, DPM, the Appellant's expert witness, appeared on behalf of the Appellant. Dr. Zelen provided sworn testimony. Noridian Healthcare Solutions, LLC, the MAC, submitted a position paper in lieu of participating in the hearing (File 12). *See* 42 C.F.R. §§ 405.1010 and 405.1012.

The exhibited files were admitted into the record without objection.

## ISSUE(S)

1. Whether all Medicare coverage requirements have been met, warranting payment under Title XVIII of the Social Security Act (Act)?

2. If the coverage requirements have not been met, whether the limitation on liability provisions of section 1879 of the Act are applicable?

## APPLICABLE LAW AND POLICY

### I. *Statutes and Regulations*

The Supplementary Medical Insurance program (Part B of the Act) provides coverage for a number of specific health-related items and services provided to eligible aged and disabled. *See* Act §§ 1832(a)(2)(B) and 1831; *see also* 42 C.F.R. § 410.10(h). An eligible individual is entitled to have payment made by Medicare on his/her behalf for medical and other health services. Act § 1832(a)(2)(B); *see also* 42 C.F.R. § 410.3.

Coverage of medical and other health services is qualified by the overarching principles of the Act, which provides that Medicare will only pay for expenses if the items or services are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." *See* Act at § 1862(a). Even then, Medicare will pay a provider of services or items only if the provider has submitted sufficient information to determine the amounts due to the provider. 42 C.F.R. § 424.5(a)(6).

---

errors since the QIC identified the service at issue correctly under the claims section of its decision. Accordingly, I have applied the QIC's denial reasons to the Xwrap amniotic product at issue here as if properly referenced.

If Medicare excludes or denies coverage for a claim because the services or items were not medically reasonable and necessary or because the services or items provided custodial care only, Medicare can still pay the claim if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that Medicare would not cover or pay for the services or items. *See* Act § 1879 (citing §§ 1862(a)(1) and 1862(a)(9)); *see also* 42 C.F.R. §§ 411.400-408; CMS, Medicare Claims Processing Manual ("MCPM"), (Internet Only Manual Publ'n 100-04) ch. 30; CMS Ruling 95-1. Where the provider, but not the beneficiary had such knowledge, beneficiary liability (but not provider liability) is limited through application of Medicare indemnification provisions. Where the beneficiary knew or reasonably could have been expected to know of coverage, no payment will be made, and the beneficiary will be found liable.

## *II. Policy and Guidance*

Only regulations issued by the Centers for Medicare & Medicaid Services ("CMS") or national coverage determinations ("NCD") can establish or change substantive legal standards governing the scope of benefits or payment for services under the Medicare program. Act § 1871(a)(2). Accordingly, no rule, requirement, or statement of policy from any other source can establish or change Medicare's benefits or payment standards. *See id.* Instead of issuing binding regulations, CMS and its contractors sometimes have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies ("LMRPs") or local coverage determinations ("LCDs"). ALJs are not bound by the manuals or the LCDs, but they must give substantial deference to these policies when applicable. 42 C.F.R. § 405.1062. If an ALJ does not follow a policy in a particular case, the ALJ must explain why the policy was not followed. *Id.*

Per the Medicare Program Integrity Manual, CMS issues NCDs that specify whether certain items, services, procedures or technologies are reasonable and necessary under § 1862(a)(1)(A) of the Act. In the absence of an NCD, Medicare contractors are responsible for determining whether services are reasonable and necessary. If no LCD exists for a particular item or service, the MACs, CERT, Recovery Auditors, and UPICs shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
  - o Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  - o Furnished in a setting appropriate to the beneficiary's medical needs and condition;
  - o Ordered and furnished by qualified personnel; and,
  - o One that meets, but does not exceed, the beneficiary's medical need.

There are several exceptions to the requirement that a service be reasonable and necessary for diagnosis or treatment of illness or injury in order to be considered for payment. The exceptions appear in the full text of §1862(a)(l)(A) of the Act. CMS, Medicare Program Integrity Manual (*MPIM*) (*Internet-Only Manual Publ'n 100-08*), ch. 3, § 3.6.2.2; *see also MPIM*, ch. 13, § 13.5.1.

## FINDINGS OF FACT AND ANALYSIS

### I. *Findings of Fact*

The following facts were established by a preponderance of the evidence:

1. The Beneficiary, a then 75-year-old male, presented for bilateral lower extremities wound care. (File 3, p. 43). His diagnoses included venous stasis ulcer of left calf with fat layer exposed with varicose veins, venous stasis ulcer of right calf limited to breakdown of skin with varicose veins, varicose veins of both lower extremities with pain, and edema of both lower extremities due to peripheral venous insufficiency. (*Id.* at 44).

2. In 2019, the Beneficiary suffered a motorcycle accident which led to right tibial fracture repair. (File 3, p. 43). On May 22, 2023, the Beneficiary had a right total knee arthroplasty and removal of deep hardware of right tibial plateau plate and screws. On September 10, 2023, he had a repair of right intertrochanteric femur fracture with a cephalomedullary nail. (*Id.*) On December 13, 2023, the Beneficiary had a repair with mesh of recurrent left inguinal hernia with laparoscopic robot assisted approach. (*Id.*) He first noted new ulcers on bilateral legs in December 2023. (*Id.*)

3. The Beneficiary's wound care started on January 8, 2024, for venous stasis ulcers on bilateral lower extremities. (File 3, p. 43). He presented to the clinic with moderate drainage (serous yellow color), with surrounding dry tissue, flaking irritation, and edema. (*Id.*) The Beneficiary was receiving wound care two to three times a week. (*Id.*)

4. The Beneficiary first started venous insufficiency workup with the Appellant's clinic (Wyoming Medical Associates) on January 23, 2024. (File 3, p. 44). The first wound care visit with the clinic occurred on March 11, 2024. (*Id.*) The home methods utilized by the Beneficiary were edema management, dietary control with increased protein intake, alcohol cessation, and elevating legs at home daily. (*Id.*) He used a foam wedge while in the recliner to raise his legs above the level of the heart and had been wearing bilateral thigh length compression stockings until new ulcers occurred. (*Id.*) The clinic methods used on his bilateral leg ulcers prior to grafts included: dull debridement with gauze, sharp debridement with #15 scalpel, Anasept, collagen fibers, and boots for compression. (*Id.*)

5. The record indicates that, with significant numbers of the Beneficiary's leg ulcers being treated, and concerns for possible iliac vein compression, an attempt was made to complete CT venogram, but with difficulty achieving intravenous access. (File 3, p. 44). MRI of the pelvis without contrast was attempted and completed on April 5, 2024. (*Id.*) Findings were negative for evidence of iliac vein compression and bilateral external and common iliac veins patent. (*Id.*)

6. The Beneficiary's wounds remained in a nonhealing state after exhaustion of conservative lifestyle, wound care measures, and good compliance with cares. (File 3, p. 44). The wounds duration was beyond 31 days. (*Id.*) Severe potential morbidity associated with nonhealing ulcerations. (*Id.*) The Beneficiary's comorbidities and need for wound healing prior to repeat right hip surgery necessitated the use of more advanced treatment including skin substitutes. (*Id.*) It was noted that the Beneficiary had sufficient nutritional status to support wound healing. (*Id.*) In addition, his vascular supply was intact. (*Id.*)

7. The Appellant received the service at issue on April 18, 2024, April 26, 2024, and April 30, 2024. (File 3, pp. 47, 53, 59, and 61).

8. During the hearing, Dr. Zelen testified that he was the first to research the use of amniotic products. He has over 15 years of managing clinical trials, and he has managed over 15 clinical trials. Dr. Zelen asserted that in 2026, Medicare will require clinical studies on all products. There are 12-15 companies that have already passed the bar regarding the required studies. He explained that the difference in the amniotic products is how they are processed (*i.e.*, how the products are cleaned, sterilized and put in a box). The product use comes down to provider preference. He testified that when a wound stalls and becomes chronic, moving to amnion brings healing within 6-12 weeks. In addition, Dr. Zelen explained that the placenta is a covering for the baby in the wound. The amnion is being used to cover the wound, so it is a homologous use. He further explained the placenta is taken from cesarean birth; the mother donates the placenta and then signs to donate it to a tissue bank where the placenta is cleaned. Dr. Zelen stated that each hospital has a tissue bank that processes the tissue for the different companies. After the tissue is processed and cleaned, it is sterilized. He asserted the product has a significantly better healing rate than the standard of care. After the initial studies, the studies started moving to venous leg ulcers. (Hearing Recording).

9. Regarding the Beneficiary, Dr. Zelen testified he has a significant history of edema and venous insufficiency ulcers since December 2023. He explained the Beneficiary's first ulcers were noted in December 2023. The Beneficiary had a new femur fracture, and the physician could not go in to repair it with surgery until the ulcers had healed. Dr. Zelen also testified there are several standard wound care visits. All wounds were free of infection, with no tunneling or undermining and all full thickness. He asserted the visits were medically reasonable and appropriate. (Hearing Recording).

## *II. Analysis*

The Appellant is seeking payment for the service at issue provided to the Beneficiary on the Dates of Service. The QIC denied payment stating that the service at issue was experimental and investigational as denoted by the Q code status nomenclature.

During the hearing, the Appellant's attorney explained that there are three denial reasons: (1) Q code denotes the product is experimental; (2) the lack of scientific literature; and (3) the use is not a homologous use issue (the homologous use was raised by MAC in its pre-hearing brief). She asserted that the contractors reference the use of the Xwrap to a pressure sore, which is irrelevant because the Beneficiary had venous insufficiency, not a pressure sore. She further asserted the product is not investigational and it was found to be safe and effective in numerous articles and studies spanning more than a decade. The Appellant's attorney also asserted that Medicare has paid claims involving the service. She argued that there currently is no requirement for each amniotic product to have a clinical study. She explained the Xwrap is a homologous use amniotic product approved under Section 361. Regarding the homologous use issue, she stated that this issue was not raised by any contractor previously. The homologous use issue was raised by the MAC for first time in its position paper. In addition, the Appellant's attorney asserted that, in its decision, the QIC referenced a product that is not at issue in the present appeal. (Hearing Recording).

In addition, Ms. DelBene asserted that the medical records and Dr. Zelen's testimony support that the products and services were reasonable and medically necessary. Regarding the

dismissed claims, the Appellant's attorney stated that the Appellant does not dispute the QIC's finding on the application codes. (Hearing Recording).

After careful consideration of the evidence and the testimony, on *de novo* review, I find that the documentation submitted supports that Medicare coverage requirements were met.

In this case, Dr. Zelen provided credible testimony that all amnion products are essentially the same and are created the same way. The only real difference is how they are cleaned and sterilized. However, they all work the same way, so it makes no substantial difference what company manufactures the product nor whether the product is single or double layer. What amnion product is used generally comes down to provider preference. Since all amniotic membrane products are essentially the same, there is no need for peer-reviewed clinical studies focusing only on a specific amniotic membrane product or brand. The products are all made from the same material and function the same way, so clinical research findings would be consistent between the different brands and products. Dr. Zelen has extensive experience in researching and utilizing amniotic membrane products for wound treatment as evidenced by his curriculum vitae. (File 13, pp. 186-192).

There is no LCD or NCD applicable to the use of the service at issue on the Dates of Service at issue in this appeal. As such, the general reasonable and necessary requirements set forth at *MPIM*, ch. 3, § 3.6.2.2 apply. Neither the MAC nor the QIC contend that the amniotic membrane product is not safe and effective nor inappropriate. The only finding against the use of the product is that it is experimental and investigational due to lack of sufficient peer-reviewed evidence-based literature, such as prospective randomized controlled trials, that explicitly involve the product. *See*. File 12, p. 6.

However, no such requirement is specified in Medicare regulations. I find Dr. Zelen's testimony detailed and highly persuasive. I find that the use of amniotic membrane products to encourage the healing of chronic non-healing or difficult to treat wounds is not experimental or investigational. Numerous peer-reviewed evidence-based studies involving amniotic membrane wound covering products, several of which are included in the administrative record, support that use of such products can be beneficial in the treatment of non-healing wounds and ulcers. *See* File 13, pp. 15-116. There currently is—and at the time of the Dates of Service there was—no legal or practical requirement that prospective randomized controlled trials or similar studies be conducted for a specific brand of product when such studies have been performed on functionally identical products which are covered by Medicare in some instances. As such, I find that the use of the product at issue is not experimental or investigational.

In addition, I find that the service at issue was reasonable and necessary for the treatment of the Beneficiary. In this instance, the record indicates the Beneficiary first noted new ulcers on his bilateral legs in December 2023. His wound care started in January 2024 for venous stasis ulcers on the bilateral lower extremities. At that time, the Beneficiary was receiving wound care two to three times a week. The record further indicates that the home methods utilized by the Beneficiary were edema management, dietary control with increased protein intake, alcohol cessation, and elevating legs at home daily. He used a foam wedge while in his recliner to raise his legs above the level of the heart and had worn bilateral thigh length compression stockings until the new ulcers occurred. In addition, the clinic where the Appellant was treated used methods including dull debridement with gauze, sharp debridement with #15 scalpel, Anasept, collagen fibers, and boots for compression before the grafts were applied. Despite all the conservative measures tried, the Beneficiary's good compliance and the wound care measures, his wounds remained in a nonhealing state for more than 31 days.

Additionally, the record indicates the Beneficiary had severe potential morbidity associated with nonhealing ulcerations. His comorbidities and the need for wound healing prior to hip surgery necessitated the use of more advanced treatment including skin substitutes. Therefore, I find that the decision to use the product at issue was reasonable and necessary based on the Beneficiary's needs, comorbidities, and treatment history.

Accordingly, the service at issue provided to the Beneficiary on the Dates of Service meet Medicare criteria for coverage, and the Appellant is entitled to Medicare payment.

## CONCLUSIONS OF LAW

I find that the service at issue provided to the Beneficiary on the Dates of Service was reasonable and necessary for the treatment of the Beneficiary's wounds. Therefore, the service at issue is covered and payable under Medicare Part B.

Regarding the claims for the application of skin substitute (15271) and application of skin substitute (15272) provided to the Beneficiary on April 18, 2024, and April 26, 2024, the Appellant did not dispute the QIC's dismissal determination for these claims. Therefore, I affirm the QIC's decision to dismiss.

## ORDER

For the reasons discussed above, this decision is **PARTIALLY FAVORABLE.** I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Kelly McNeil Legier
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated____________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________

________________________________________

________________________________________

________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**New Orleans, LA**

| | |
|---|---|
| Appeal of: **WYOMING MEDICAL ASSOCIATES, LLC** | OMHA Appeal No.: **3-15371266459** |
| Beneficiary: [redacted] | Medicare Part: **B** |
| Medicare No | Before: **Kelly McNeil Legier** Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Visit notes : | File 3 | 43 | : 46 |
| Medical & Related: Wound documentation | File 3 | 47 | : 48 |
| Medical & Related: Visit notes | File 3 | 49 | : 52 |
| Medical & Related: Wound documentation: 4/26/2024 | File 3 | 53 | : 54 |
| Medical & Related: Visit notes | File 3 | 55 | : 58 |
| Medical & Related: Wound documentation : 4/18/2024 | File 3 | 59 | : 65 |
| Medical & Related: Invoice | File 6 | 54 | : 54 |
| Medical & Related: Medical Records | File 6 | 57 | : 62 |
| Medical & Related: Letter of medical Necessity | File 6 | 82 | : 83 |
| Medical & Related: Medical Records | File 6 | 84 | : 92 |
| Medical & Related: Medical Records | File 7 | 54 | : 62 |
| Medical & Related: Medical Records: 4/18/2024 | File 7 | 111 | : 116 |
| Medical & Related: Invoice : 4/15/2024 | File 7 | 126 | : 126 |
| Medical & Related: Medical Records: | File 7 | 155 | : 157 |
| Medical & Related: Medical Records | File 7 | 160 | : 163 |
| Guidance: Wound Grafts- Continuing Education | File 6 | 47 | : 53 |
| Position Statements: CMS contractor | File 12 | 1 | : 8 |
| Position Statements: Appellant | File 6 | 55 | : 56 |
| Procedural - CMS Levels: Reconsideration: 7/22/2025 | File 1 | 11 | : 19 |
| Procedural - CMS Levels: Reconsideration - Rep: 7/22/2025 | File 2 | 1 | : 9 |
| Procedural - CMS Levels: Reconsideration - Appellant: 7/22/2025 | File 2 | 10 | : 20 |
| Procedural - CMS Levels: Reconsideration - Beneficiary: 7/22/2025 | File 2 | 21 | : 29 |
| Procedural - CMS Levels: Request for Reconsideration: 5/30/2025 | File 3 | 1 | : 2 |
| Procedural - CMS Levels: Rep appointments | File 3 | 4 | : 6 |
| Procedural - CMS Levels: list of claims and dates at issue | File 3 | 7 | : 7 |
| Procedural - CMS Levels: Remittance Advices | File 3 | 9 | : 17 |
| Procedural - CMS Levels: Redetermination - Appellant: 12/19/2024 | File 3 | 19 | : 26 |
| Procedural - CMS Levels: Redetermination - Appellant: | File 3 | 27 | : 34 |

Index of the Administrative Record and Exhibit List

12/05/2024

| | | | | |
|---|---|---|---|---|
| Procedural - CMS Levels: Redetermination - Appellant : 12/4/2024 | File 3 | 35 | : | 41 |
| Procedural - CMS Levels: QIC Acknowledgement Letter - Rep | File 4 | 1 | : | 3 |
| Procedural - CMS Levels: Medical review | File 6 | 3 | : | 4 |
| Procedural - CMS Levels: Redetermination - Beneficiary : 12/19/2024 | File 6 | 5 | : | 12 |
| Procedural - CMS Levels: CMS Medicare interface | File 6 | 27 | : | 27 |
| Procedural - CMS Levels: Medical Review | File 6 | 28 | : | 29 |
| Procedural - CMS Levels: Redetermination- Beneficiary : 12/5/2024 | File 6 | 30 | : | 37 |
| Procedural - CMS Levels: Medical Review | File 6 | 46 | : | 46 |
| Procedural - CMS Levels: Request for Redetermination | File 6 | 63 | : | 63 |
| Procedural - CMS Levels: CMS Medicare Interface | File 6 | 64 | : | 64 |
| Procedural - CMS Levels: Medical review | File 6 | 65 | : | 66 |
| Procedural - CMS Levels: Redetermination - Beneficiary : 12/4/2024 | File 6 | 67 | : | 73 |
| Procedural - CMS Levels: Medical review | File 6 | 81 | : | 81 |
| Procedural - CMS Levels: Medical review | File 7 | 3 | : | 4 |
| Procedural - CMS Levels: Redetermination - Beneficiary: 12/19/2024 | File 7 | 5 | : | 12 |
| Procedural - CMS Levels: Medical review | File 7 | 21 | : | 25 |
| Procedural - CMS Levels: Request for Redetermination | File 7 | 26 | : | 26 |
| Procedural - CMS Levels: Medical review | File 7 | 27 | : | 29 |
| Procedural - CMS Levels: Request for Redetermination | File 7 | 91 | : | 91 |
| Procedural - CMS Levels: Request for Redetermination | File 7 | 95 | : | 95 |
| Procedural - CMS Levels: Redetermination - Beneficiary : 12/4/2024 | File 7 | 96 | : | 102 |
| Procedural - CMS Levels: Redetermination - Appellant: 12/4/2024 | File 7 | 103 | : | 109 |
| Procedural - CMS Levels: Medical review | File 7 | 110 | : | 110 |
| Procedural - CMS Levels: Request for Redetermination | File 7 | 130 | : | 130 |
| Procedural - CMS Levels: Redetermination - Beneficiary: 12/4/2024 | File 7 | 131 | : | 138 |
| Procedural - CMS Levels: Redetermination- Appellant : 12/4/2024 | File 7 | 139 | : | 146 |
| Procedural - CMS Levels: Medical review | File 7 | 147 | : | 147 |
| Procedural - OMHA Level: Request for ALJ Hearing: 8/08/2025 | File 1 | 1 | : | 4 |
| Procedural - OMHA Level: Rep appointments | File 1 | 6 | : | 7 |
| Procedural - OMHA Level: Claims appealed | File 1 | 9 | : | 9 |
| Procedural - OMHA Level: Notice of Hearing | File 10 | 1 | : | 11 |
| Procedural - OMHA Level: Request for case file | File 11 | 1 | : | 3 |
| Procedural - OMHA Level: Prehearing brief w/ attachmentws | File 13 | 1 | : | 192 |
| Procedural - OMHA Level: Appellant Prehearing brief supplement | File 14 | 1 | : | 14 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 8 | 1 | : | 3 |
| Proceeding (Audios): Hearing audio | File 9 | 1 | : | 1 |

Index of the Administrative Record and Exhibit List

| **Non-Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Records not considered: General | File 1 | 5 | : | 5 |
| Records not considered: General | File 1 | 8 | : | 8 |
| Records not considered: General | File 1 | 10 | : | 10 |
| Records not considered: General | File 1 | 20 | : | 21 |
| Records not considered: General | File 2 | 10 | : | 11 |
| Records not considered: General | File 3 | 3 | : | 3 |
| Records not considered: General | File 3 | 8 | : | 8 |
| Records not considered: General | File 3 | 18 | : | 18 |
| Records not considered: General | File 3 | 42 | : | 42 |
| Records not considered: General | File 5 | 1 | : | 3 |
| Records not considered: General | File 6 | 1 | : | 2 |
| Records not considered: Duplicate evidence | File 6 | 13 | : | 20 |
| Records not considered: Duplicate evidence | File 6 | 21 | : | 25 |
| Records not considered: Duplicate evidence | File 6 | 26 | : | 26 |
| Records not considered: Duplicate evidence | File 6 | 38 | : | 45 |
| Records not considered: Duplicate evidence | File 6 | 74 | : | 80 |
| Records not considered: General | File 7 | 1 | : | 2 |
| Records not considered: Duplicate evidence | File 7 | 13 | : | 20 |
| Records not considered: Duplicate evidence | File 7 | 30 | : | 45 |
| Records not considered: Duplicate evidence | File 7 | 46 | : | 46 |
| Records not considered: Duplicate evidence | File 7 | 47 | : | 53 |
| Records not considered: Duplicate evidence | File 7 | 63 | : | 90 |
| Records not considered: D | File 7 | 92 | : | 92 |
| Records not considered: Duplicate evidence | File 7 | 93 | : | 94 |
| Records not considered: Duplicate evidence | File 7 | 117 | : | 118 |
| Records not considered: Duplicate evidence | File 7 | 119 | : | 125 |
| Records not considered: Duplicate evidence | File 7 | 127 | : | 127 |
| Records not considered: Medical review | File 7 | 128 | : | 129 |
| Records not considered: Duplicate evidence | File 7 | 148 | : | 154 |
| Records not considered: Duplicate evidence | File 7 | 158 | : | 159 |
| Records not considered: Duplicate evidence | File 7 | 164 | : | 164 |